IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE J., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21 C 308 |
| | ) | |
| | ) | Magistrate Judge M. David Weisman |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
|     Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

    Denise J. appeals the Acting Commissioner's decision denying in part her application for Social Security benefits. For the reasons set forth below, Plaintiff's motion for summary judgment [21] is granted in part and denied in part; the Court affirms in part and reverses and remands in part the Acting Commissioner's decision. Civil case terminated.

## **Background**

    In March 2015, plaintiff applied for benefits, alleging a disability onset date of January 1, 2013. (R. 183-86, 211). The administrative law judge ("ALJ") held a hearing and denied her application initially, after reconsideration. (R. 12-29, 30-81.) The Appeals Council declined review (R. 3-8), leaving the ALJ's decision as the final decision of the Acting Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). (R. 673, 789-840.) On January 4, 2019, plaintiff filed a complaint seeking review. (R. 783-88). Based on defendant's agreed motion for reversal with remand, this Court reversed the ALJ's decision on September 30, 2019.[1] (R. 841-48.) While plaintiff's March 2015 application was pending, she filed applications for disability insurance benefits and supplemental security benefits (SSI) in December 2018. (R. 673, 789-840.) The ALJ held another hearing in June 2020, and in September 2020, issued a partially favorable decision finding that plaintiff became disabled on September 29, 2016, but medical improvement occurred beginning June 20, 2018, such that she could perform the same range of sedentary work as before September 29, 2016, and as to which a significant number of jobs existed in the national economy. (R. 667-97.) Plaintiff then filed the instant complaint, seeking review of the ALJ's decision for the period before September 28, 2016 and after June 20, 2018.

---

[1] The parties filed an agreed motion for remand to allow the ALJ to consider the March 2017 pulmonary function study; offer plaintiff the opportunity to submit additional evidence; have a hearing; and issue a new decision. (*Jackson v. Saul*, No. 19 C 66, Dkt. # 25.)

**Discussion**

Constitutional Argument

The Court first addresses plaintiff's argument that the Social Security Administration's ("SSA") structure is unconstitutional because it violates the separation of powers. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) (stating that the "insulation from removal by an accountable President is enough to render the agency's structure unconstitutional"). Plaintiff argues that because the structure of the SSA mimics that of the CFPB, the SSA's structure is unconstitutional and the ALJ's decision is therefore invalid.

*Seila* does not, however, support plaintiff's claim. Though the *Seila* Court noted that the removal provisions for the Director of the CFPB and the Commissioner of the SSA were similar, it expressly distinguished the latter from the former: "[U]nlike the CFPB, the SSA lacks the authority to bring enforcement actions against private parties. . . . [and] [i]ts role is largely limited to adjudicating claims for Social Security benefits." *Id*. at 2202. Moreover, even if *Seila* rendered unconstitutional the statute governing removal of the SSA Commissioner, plaintiff would be entitled to a remand only if she were harmed by the unconstitutional statute, *Collins v. Yellen*, 141 S. Ct. 1761, 1788-89 (2021), a showing plaintiff has not made. Accordingly, the alleged unconstitutionality of the provision for removing the Commissioner of SSA is not grounds for remanding plaintiff's claim.

ALJ Decision

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.,* "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Acting Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform ("RFC") her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). Considering all plaintiff's impairments, the ALJ found that, prior to September 29, 2016, and as of June 19, 2018, plaintiff was not disabled and had the residual functional capacity (RFC) to perform sedentary work except that she could occasionally climb

ladders, ropes, scaffolds, stairs or ramps; frequently kneel, crouch and crawl; must avoid concentrated exposure to extreme heat, extreme cold, humidity, wetness, fumes, odors, dusts, gases and poor ventilation; and could have no exposure to hazards, including commercial driving. (R. 678, 685).

Plaintiff contends that the ALJ erred on several grounds. First, plaintiff asserts that the ALJ failed to properly evaluate plaintiff's respiratory impairment. Although the ALJ determined that plaintiff's asthma and chronic obstructive pulmonary disease ("COPD") were severe impairments and between September 29, 2016 and June 19, 2018, plaintiff was disabled because the severity of the respiratory impairments met the criteria of Listing 3.02 (R. 676, 683), the ALJ concluded that medical improvement as of June 20, 2018 resulted in her respiratory impairment no longer meeting Listing 3.02. (R. 684-85.) According to plaintiff, the ALJ did not provide any meaningful analysis of the effects of the respiratory impairments on plaintiff's RFC.

The ALJ acknowledged that in April 2020, plaintiff experienced a severe exacerbation of her respiratory impairments, which required hospitalization, intubation, and a period of rehabilitation. (R. 686.) The ALJ explained, however, that since June 20, 2018, plaintiff's respiratory impairments did not completely preclude plaintiff from working because there was no evidence to support an inference that plaintiff's residual symptoms would persist for 12 months or more. (*Id*.) *See* 42 U.S.C. § 423(d)(1)(A) (disability means the inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than twelve months); 20 C.F.R. § 404.1509. The ALJ noted that at an internal medicine consultative examination on March 4, 2019, Jorge Aliaga, M.D. reported that plaintiff's asthma and COPD were "well controlled with medication." (R. 685, citing R. 1244). Further, the ALJ reviewed and considered the medical evidence submitted on behalf of plaintiff after the hearing and indicated that it did not contain any additional pulmonary function test results or identify any recent COPD exacerbations other than those in July and October 2018, April 2019 and April 2020, which had been previously documented. As plaintiff notes, evidence before the ALJ suggested that plaintiff's ability to breathe waxed and waned, (Pl.'s Brief Supp., Dkt. # 22, at 8-9), but plaintiff does not explain what additional RFC limitations were required to address them. Her failure to do so renders harmless any error the ALJ may have made. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (stating that plaintiff's failure to hypothesize work restrictions necessary to address his alleged CPP limitations rendered harmless any error the ALJ may have made in the RFC).

Plaintiff next asserts that the ALJ failed to properly evaluate her mental impairments when he found that plaintiff's depression and anxiety were not severe. The ALJ concluded as follows:

> Based upon intermittent mental health treatment, good response to individual psychotherapy which she engaged in for less than twelve months, improved symptoms within one month of starting psychotropic medication three years later, and mental status examination findings within normal limits upon starting psychotropic medication, the undersigned finds that since the alleged onset date, the claimant's mental impairments have been

3

> nonsevere. . . .[and] have caused no limitation in any four of the broad areas of mental functioning.

(R. 677.) According to plaintiff, not only do her treatment notes document clinical findings supporting severe mental impairments, but a psychological consultative examination in March 2019 resulted in Dr. Grant Boyer diagnosing plaintiff with major depressive disorder, recurrent, moderate, manic disorder without agoraphobia, and PTSD. (R. 1253.) By definition, plaintiff asserts, major depression establishes a severe mental impairment. *See O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2017) ("We have not found a published opinion from any circuit in which an ALJ declared that major depression was not a severe impairment. . . ."). The ALJ's summary of plaintiff's mental examinations and treatment notes did not mention Dr. Boyer's report. While the ALJ is required to consider all the evidence, 20 C.F.R. 404.1520, and erred in not addressing Dr. Boyer's report, this failure is harmless because plaintiff does not explain what additional RFC limitations were required to address her mental limitations. *Jozefyk*, 923 F.3d at 498.[2] In other words, while plaintiff's mental health may be the basis for a finding of severe impairment, that same finding does not answer the impact of the impairment on plaintiff's RFC. Plaintiff has not provided any basis for this Court to conclude that the RFC determined by the ALJ would have been impacted in any way.

Plaintiff further alleges that the ALJ erred in evaluating plaintiff's symptoms by noting that plaintiff continued to smoke against the recommendations of her doctors. The ALJ noted plaintiff's denial at her post-remand hearing that she continued to smoke despite the consultative examiner's March 2019 statement that plaintiff had reported smoking three to four cigarettes a day. The ALJ also remarked that plaintiff previously expressed difficulty in cutting back on her smoking when she had been diagnosed with COPD. (R. 685) (citing R. 1484) (record from April 2020 hospital visit indicating that plaintiff's sister, with whom plaintiff lived, stated that while plaintiff smoked one pack of cigarettes a day for 20 years, she had "cut down significantly" in the past 5 years since being diagnosed with COPD, "but might have been smoking still with 1-2 cigarettes a day"). Further, the ALJ points to the hospital's May 12, 2020 progress notes (which were made 6 weeks prior to the hearing) in which the medical provider stated that "patient has a significant nicotine history" and "[h]ighly recommend[ed] smoking cessation." (R. 1429, 22F at 130.) Contrary to plaintiff's contention, the ALJ's reference to plaintiff's smoking was not speculative. Moreover, the ALJ did not state that plaintiff's smoking affected the severity of her respiratory issues, rather, he noted that plaintiff's tobacco use persisted. The Court finds no error; accordingly, this aspect of the ALJ's decision is affirmed.

Finally, plaintiff contends that the ALJ failed to address plaintiff's sitting limitations and her need for frequent breaks to change positions, lie down, and use her nebulizer. As to the sitting limitations, plaintiff argues that two treating physicians, Drs. Birnie and Smith, opined that plaintiff could sit for less then two hours in an 8-hour workday, and that plaintiff consistently described sitting difficulties and the need to alternate positions. The ALJ gave little weight to the statements of Drs. Birnie and Smith, stating that

---

[2] To the extent plaintiff's reply brief sets forth new arguments regarding the ALJ's purported errors, the Court will not consider them.

> the record is inconsistent with and contains no objective evidence to support limitation to sitting less than two hours in an eight-hour day and no more than 10 minutes at a time (5F, 8F). The claimant admitted lower extremity pain triggered by standing or walking, rather than by prolonged sitting.

(R. 681.) The ALJ also noted the opinion of Dr. Munoz, an expert who testified at the June 2020 hearing, "who indicated no objective evidence to support inability to sit for sustained periods." (*Id*.) Thus, the ALJ's assessment of the medical evidence presented was supported by the record. Nor does the Court find that the ALJ erred in assessing plaintiff's sitting limitations based on her knee pain. Notably, the ALJ disagreed with Dr. Munoz's opinion that there was no evidence of patellofemoral impairment, finding that one of plaintiff's severe impairments was bilateral patellofemoral pain syndrome. (R. 676.) The ALJ noted, however, that plaintiff had denied a steroidal injection in June 2015 (R. 679), referred to June 2018 record evidence indicating that plaintiff had a "normal gait" and "5/5 strength in her extremities," (R. 686) (citing R. 1213, 15F/88), and observed that plaintiff denied gait disturbance in April 2020. (*Id*.) (citing R. 1285, 21F/16.) Thus, the ALJ addressed plaintiff's purported sitting limitations and found them to be unsupported by the record. Regardless, plaintiff has not identified additional RFC limitations that would address the sitting issues, rendering harmless any error the ALJ may have made. *Jozefyk*, 923 F.3d at 498.

With respect to plaintiff's assertion that the ALJ did not address plaintiff's need for frequent breaks to change positions, lie down, and use her nebulizer, plaintiff testified to these limitations at the June 2020 hearing. (R. 728.) In addition, plaintiff notes that Dr. Smith opined that plaintiff would need constant breaks due to chest pain and fatigue, and Dr. Birnie indicated plaintiff could sit for 10 minutes at a time for less than 2 hours in an 8-hour workday and stand/walk for 10 minutes at a time for less than 2 hours in an 8-hour day. Moreover, plaintiff points to the vocational expert's testimony that an individual would not be permitted to change position at will and would not be employable if she were "off-task" up to 15% of the workday. For these reasons, plaintiff asserts that the ALJ erred. SSR 16-3p ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her records and how our evaluation of the individual's symptoms led to our conclusions.").

The Commissioner acknowledges that the "ALJ did not specifically mention plaintiff's allegation of the work-preclusive limitation of the need for frequent breaks," (Gov't's Resp., Dkt. # 27, at 27), but asserts that the ALJ discussed the reasons for giving plaintiff's treating doctors' opinions little weight and noted "much of plaintiff's testimony about her functional limitations." (*Id*.) According to the Commissioner, the logical bridge is a "lax standard" that imposes only a "minimal duty" on the ALJ, and the subjective-symptom analysis is supported by substantial evidence. (*Id*.) While the standard may be lax, it is not nonexistent. The Court finds that the ALJ erred by failing to address, even implicitly, plaintiff's need for frequent breaks. *See Jamison v. Astrue*, No. 2:08-CV-232-TS, 2010 WL 405954, at *6 (N.D. Ind. Jan. 25, 2010) (stating that "although the ALJ discounted the opinions of two treating physicians who completed questionnaires regarding the Plaintiff's residual functional capacity, limitations for stress incontinence did not appear to be a factor in their opinions, and the Court cannot be confident that the ALJ considered the Plaintiff's stress incontinence, even implicitly—and simply rejected it as

5

an impairment that would require frequent unscheduled breaks" and concluding that "nothing in the record creates a logical bridge between the evidence regarding stress incontinence and the ALJ's decision not to adopt a limitation for frequent bathroom breaks.").

      For these reasons, the decision of the ALJ is affirmed in part and reversed and remanded in part, as discussed above.

**Date**: September 28, 2023

**M. David Weisman**
**United States Magistrate Judge**